# SUPREME COURT.

JOHN M. OTTER, respondent, agt. THE BREVOORT PETROLEUM
COMPANY, appellant.

Where a petroleum company newly organized authorized W. their president and
L. one of their trustees, to sell 4,000 shares of stock of the said company for $2.50
per share, the par value being $10, and W. received from the plaintiff $1,750,
and gave a receipt for that sum from the plaintiff in full for 700 shares of the capital
stock of the company, the receipt to be exchanged for certificates of stock on pre-
sentation to the secretary and signed the receipt "for J. G. W., treasurer,"—it
constitutes a valid contract on the face of it, binding the company to deliver the
stock for which the plaintiff's money was received.

There is no rule of public policy that requires a court to relieve defendants from a
contract, otherwise without objection, binding it to the delivery of shares in its
capital for a price below the par value. (*Per* LEONARD, *J.*)

Where a judgment is rendered for damages against a company for the non-delivery
of 200 shares of its capital stock at the highest market rates between the time when
the plaintiff demanded certificates therefor and the day of trial, waiving the specific
delivery of the shares, the plaintiff claiming that the company had rendered them-
selves incapable of performing the contract sued on, because the particular shares
had been conveyed to another; nevertheless, the rule of damages stated is correct;
but it should also be shown that the company had not other shares for which they
could lawfully issue certificates to the plaintiff, if they were under obligations to
do so.

Where the plaintiff purchased of W. acting as aforesaid, on behalf of the company,
500 shares of its capital stock and represented to W. that he had previously pur-
chased of L., also acting as aforesaid on behalf of the company, 200 shares more,
and W. believing such representation as to the 200 shares to be true, received pay
for the 700 shares and gave receipt as aforesaid; and it turned out such represen-
tation was untrue in fact, and the company thereupon tendered back to the plain-
tiff the money for the 200 shares and refused to issue, the certificates for the 200
shares; notwithstanding such receipt and payment, there was not a valid and
binding contract between the plaintiff and defendants as to the 200 shares.

The agreement to sell was signed by W. under a mistake at least, as to the fact of a
sale made L., which mistake occurred by the erroneous statement of the
plaintiff.

*First Judicial District, General Term, December,* 1868.
*Before Hon.* WM. H. LEONARD, *P. J.;* SUTHERLAND *and*
PECKHAM, *Justices.*

THIS action was commenced to compel the specific per-
formance of an alleged contract for the sale of 200 shares of

the stock of the defendant a corporation organized under the geueral manufacturing act of this state.

The par value of the stock is $10 per share. And it is alleged that the defendant agreed to sell 700 shares of such stock to the plaintiff for $2.50 per share.

The defendant authorized their president George H. White and William H. Lee, director and partner with the plaintiff, to solicit subscriptions to their stock and after the plaintiff subscribed verbally for 500 shares. White then left town, but on his return called to see Lee, but found only Otter who assured him he had subscribed with Lee, for 200 shares more at the same rate, and induced White to take the money for 700 shares and he gave receipt (in his own name for J. G. Willams, treasurer).

Lee denying that Otter had subscribed for the 200 extra shares, the company refused to ratify the subscription and the money was tendered back to Otter. There were 8,000 shares of the stock reserved for sale of which only 4,000 were disposed of.

The plaintiff brought action claiming to have a delivery of the 200 shares of stock he had agreed with Lee to subscribe for, and the referee instead of giving him the stock as he claimed, gave him a money judgment against the defendant in lieu thereof for $6,948.64, although the whole original price was $500.

D. McMAHON, *for defendants, appellants.*

1. The verbal subscriptions were not contracts between the the plaintiff and defendant.

2. The written receipt was not a contract between the parties.

(*a.*) It was not a contract at all, but a mere receipt by Geo. H. White for the treasurer.

(*b.*) It does not purport to be a contract on behalf of the defendant. The defendant is not a party to it.

(c.) It was not executed by authorty of the trustees who alone had power to contract on behalf of the, defendants. (*Laws of* 1848, *p.* 55, § 3.)

(d.) The trustees not only did not authorize such receipt, but refused to confirm the verbal subscription for stock by the plaintiff. (*Moss agt. Livingston,* 4 *N. Y. R.* 208; *De Witt* agt. *Walton,* 9 *N. Y. R.* 571.)

3. The subscription for the stock for less than the par value thereof and any contract founded on such subscription is void.

(a.) The whole amount subscribed must be paid by the stockholder, (*Laws of* 1848, *p.* 56, §§ 6 *and* 7), and a failure to do so within two years works a forfeiture of the charter. (*Id.*)

(b.) Until such payment in full and a sworn certificate thereof is filed and recorded the stockholders are individually liable. (*Id.,* §§ 10 & 11.)

(c.) An issue of the stock for one quarter of its amount is a fraud on the laws and the plaintiff is a party to it.

(d.) Such a contract as is alleged, is contrary to the policy of the law and will not be sustained. (*Payne* agt. *Eden,* 3 *Caines,* 213; *N. Y. Firemen's Ins. Co.* agt. *Mech. Ins. Co.* 7 *Wend.* 31; *Perkins* agt. *Savage,* 15 *Wend.* 412; *Jackson* agt. *Walker,* 5 *Hill,* 27, *and* 7 *Id.* 387.)

The plaintiff (if he had any valid claim), had his election to rescind the contract for a breach and bring action at law for his damages or to proceed in equity to compel a transfer of the stock. He made that election and claimed the stock specifically and cannot make a new election and recover enormous damages. (*See Boyd* agt. *Vanderkemp,* 1 *Barb. Ch.* 273.)

It was monstrous to permit a new election every time one party found it to his interest and the referee had no right to make such new election for him, and give him very much more and an entirely different remedy for what was claimed by the pleadings.

The bill is one for specific performance only, the damages claimed are for detention of the stock, yet without a trial by jury, the referee ignored the right the defendant had to a trial by jury in an action if treated as breach of covenant.

The rule of damages adopted by the referee was erroneous, the action being in its essence one for a specific performance, his legal damages were loss of dividends or interest on the amount paid, viz.: $2.50 per share on 200 shares, the number claimed and the amount paid without any proof of what the value was at the time of the breach of the alleged contract and interest on that value, a rule adopted in one case (vide *Brinkerhoff* agt. *Phelps*, 43 *Barb. p.* 469), and without any proof of what the market value was at the time and place of delivery less amount paid, a rule adopted in *Dana* agt. *Feidler* (12 *N. Y. R.* 40), or without any proof of the value of the stock at the time of the filing the bill after deducting unpaid purchase money, a rule adopted in *Boyd* agt. *Vanderkemp* (1 *Barb. Ch.* 273), or without any proof of the difference in value between cost price and market value at time of demand, a rule adopted in 7 *Bosw.* 515, *and* 6 *Barb.* 646. The referee allowed the highest market value between the day of breach and the day of trial, and on the most general and unsatisfactory proof even of that kind gives the extraordinary judgment of nearly $7,000 for what cost only $500. The rule of allowing the highest market value between breach and day of trial is confined to special cases, and is reprobated in *Suydam* agt. *Jenkins* (3 *Sandf.* 614). In the plaintiff's complaint no special damages are averred. The allegation in that particular is of a round sum. No such damages as the referee allowed are necessarily implied from the breach of this alleged contract. On the contrary re-payment of sum advanced and interest would be the legitimate fruits of the injury. If the plaintiff sought particular or special damages he must have alleged them. Contingent profits which might have been realized from the fullfilment of a contract, are not recoverable as damages for its breach.

(*Driggs* agt. *Dwight*, 17 *Wend.* 71; 4 *Barb.* 261; *Peters* agt. *Whitney*, 23 *Barb.* 24; *Hargous* agt. *Ablon*, 5 *Hill*, 472.)

Lastly. The judgment should be reversed and the plaintiff's complaint dismissed.

R. W. VAN PELT, *for plaintiff, respondent.*

*By the court,* LEONARD, P. J. The defendants authorized George H. White, their president and William H. Lee, a trustee to sell four thousand shares of the stock of the company for $2.50 per share, the par value being $10. White received from the plaintiff $1,750, on the 23d of August, 1864, and signed a receipt for that sum from the plaintiff in full of seven hundred shares of the capital stock of the company, the receipt to be exchanged for certificates of stock on presentation to the secretary.

White signed the receipt for J. G. Williams, treasurer; this is a valid contract on the face of it binding the company to deliver the stock for which the plaintiff's money was received.

It is said that public policy will not permit an incorporated company to sell its own shares for less than par. The facts are not before the court to raise the question mentioned. It has not been made to appear how the company acquired the stock. It may have been issued for property and acquired subsequently by the company, or it may have been forfeited stock for the non-payment of the subscription price. It cannot be inferred in favor of the defendants, that the stock had not been fully paid up and afterwards acquired by the company. If it were otherwise, I am unable to perceive any rule of public policy that requires the court to relieve the defendants from a contract otherwise without objection binding it to the delivery of shares in its capital for a price below its par value. The contest in this case relates to the non-delivery of two hundred shares, a portion of the number mentioned in the contract. The company delivered to the plain-

tiff certificates for five hundred shares admitting the validity of the contract only to that extent. When the receipt was signed by the president of the company the plaintiff stated that he had agreed with Mr. Lee to take two hundred shares from him in addition to the five hundred which he had agreed before that time verbally with the president, to take and pay for at the price named. He stated to White that Lee had agreed that he should have two hundred shares of the stock which the company were offering to dispose of through the agency of White and Lee. It appeared that Lee was absent from the city of New York when the business was transacted and White relying upon the truth of this statement received the money of the plaintiff and signed the obligation of August 23d, binding the company to deliver the additional two hundred shares claimed by the plaintiff. Lee was a witness on the trial as well as the plantiff, and testified that he had not made any agreement to sell the two hundred shares to the plaintiff. Upon his return he had informed the officers of the company that he had not made any such agreement as had been claimed by the plaintiff, and insisted that the shares so claimed had been taken by and belonged to him the said Lee. The defendants accepted his version of the matter and issued the shares in controversy to Mr. Lee. It is quite clear from an examination of the evidence that there was no valid contract between Lee, either in his individual capacity or acting as the trustee and agent of the company, and the plaintiff for the purchase and sale of the shares in question.

There was no contract in writing signed by the parties or either of them, and nothing paid or received on account. As between Lee and the plaintiff the contract was *nudum pactum* and in no way obligatory upon either party.

The statement made by the plaintiff to White upon which he procured the contract for the additional 200 shares of stock, was without foundation and ought not to have been made. It may be that there had been a conversation between Lee and the plaintiff to the effect stated by

the plaintiff, and the plaintiff may not have intended a fraud upon any one, but that does not strengthen the case on his part, although it may have the effect of relieving him from the charge of misrepresentation with a fraudulent intent. The agreement was signed by White under a mistake at least as to the fact of a sale made by Lee, and that mistake occurred by the erroneous statement of the plaintiff. The contract for that reason was not binding upon the company so far as it related to the two hundred shares. The defendants were willing to rescind and tender to the plaintiff the money received from him, but he declined it. The judgment rendered is for $6,948.64 damages, for the non-delivery of the two hundred shares at the highest market rate between the time when the plaintiff demanded certificates therefor and the day of trial, waiving the specific delivery of the shares, this judgment for money damages instead of the shares, is claimed by the plaintiff upon the ground that the defendants having issued certificates for the said shares to Lee had rendered themselves incapable of specifically performing the contract by delivering the shares to the plaintiff. The rule stated is correct, but the fact has not been shown to exist as claimed. There is no proof that the defendants had no other shares for which they could lawfully issue certificates to the plaintiff if they were under an obligation to do so. In my opinion the judgment should be reversed, and a new trial be had before the same referee, with costs to abide the event.

Judgment reversed and new trial granted.